## IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF THE DISTRICT OF COLUMBIA

TOMAS ALVAREZ
10616 Hockberry Way
Beltsville, MD 20705

and

ERIKA AQUINO
2020 Lewisdale Drive
Hyattsville, MD 20783,

***On Behalf of Themselves and All Others
Similarly Situated,***

        Plaintiffs,

    v.

CAPITOL DRYWALL, INC.
7871 Beechcraft Avenue, Suite 100,
Gaithersburg, MD 20879,

EAST COAST DEVELOPERS, LLC
18219-D Flower Hill Way
Gaithersburg, MD 20789

and

GABRIEL MONTECINOS
7429 Rosewood Manor Lane
Gaithersburg, MD 20882,

        Defendants.

Case No. [_____]

Collective Action Complaint

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Tomas Alvarez ("Mr. Alvarez") and Erika Aquino ("Ms. Aquino"), by and

through undersigned counsel, on behalf of themselves and all others similarly situated, bring this

Collective Action Complaint against defendants Capitol Drywall, Inc. ("Capitol Drywall"), East Coast Developers, LLC ("ECD"), Gabriel Montecinos ("Mr. Montecinos"), and together with Capitol Drywall and ECD, "Defendants," to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and other relief as appropriate under: Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"); Section 32-1012(b) of the D.C. Minimum Wage Act Revision Act, D.C. Code §§ 32-1001 *et seq.* (the "DCMWA"); the D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq.* (the "DCWPCL"); and District of Columbia common law.

All allegations made in this complaint are based on Plaintiffs' current knowledge, information, and belief, and are subject to amendment based on developments made during discovery.

## PARTIES AND JURISDICTION

1.      Plaintiff Mr. Alvarez resides in the State of Maryland and was employed by Defendants as a drywall finisher from March 2, 2017, to March 17, 2017.

2.      Plaintiff Ms. Aquino resides in the State of Maryland and was employed by Defendants as a drywall finisher from March 6, 2017, to March 17, 2017.

3.      Throughout their respective employment terms, Plaintiffs performed various drywall finishing tasks at a luxury residential construction site located at 2501 M Street NW, Washington, D.C. 20037.

4.      At all times relevant to this action, Plaintiffs were employees engaged in commerce within the meaning of the FLSA.

5.      On information and belief, defendant Capitol Drywall is a Maryland corporation, organized in 1996, with its principal place of business in Maryland.  At all times relevant to this

action, Capitol Drywall operated continuously in the District of Columbia and the surrounding states, performing construction work and related services.

6.     Capitol Drywall is an enterprise engaged in interstate commerce within the meaning of the FLSA, and is an employer of Plaintiffs within the meaning of the FLSA, the DCMWA and the DCWPCL.

7.     On information and belief, Defendant ECD is a Maryland limited liability company, organized in 2013, with its principal place of business in Maryland. At all times relevant to this action, ECD operated continuously in the District of Columbia and the surrounding states, performing construction work and related services.

8.     ECD is an enterprise engaged in interstate commerce within the meaning of the FLSA and is an employer of Plaintiffs within the meaning of the FLSA, the DCMWA and the DCWPCL.

9.     Defendant Mr. Montecinos resides in the State of Maryland. Mr. Montecinos is the founder, president, and owner of ECD, and has exerted a substantial amount of control over significant aspects of the company's day-to-day operations in the District of Columbia and surrounding states during all relevant time periods.

10.    Mr. Montecinos is an employer of Plaintiffs within the meaning of the FLSA, the DCMWA, and the DCWPCL.

11.    The unlawful acts charged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

12.    This Court has jurisdiction over Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337, relating to "any civil action or proceeding arising under

any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.

13.     This Court has supplemental jurisdiction over Plaintiffs' claims pursuant to District of Columbia law under 28 U.S.C. § 1367(a) because those claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

14.     Venue is proper pursuant to 28 U.S.C. § 1391.

## COLLECTIVE ACTION COMPLAINT

15.     This action is brought as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(a), and the DCWCPL, D.C. Code § 32-1308(a), by Plaintiffs, on behalf of themselves and all other employees similarly situated, based on employment with Defendants as non-exempt, hourly-paid or salaried employees between November 1, 2015, and the date of the final disposition of this action (the "Relevant Period"), to recover lost wages, liquidated damages, interest, attorneys' fees, costs, and all other relief as appropriate for Defendants' willful statutory violations.

16.     Plaintiffs have each given their written consent to be party plaintiffs in this action under the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(a), and the DCWCPL, D.C. Code § 32-1308(a). Plaintiffs' consents are appended to this Complaint as Attachments 1 and 2.

## FACTS

### Defendant Capitol Drywall's Status as Employers

17.     Defendant Capitol Drywall is "one of the leading and fastest growing commercial drywall contractors in the Washington, D.C. metropolitan area."[1]   Capitol Drywall provides construction services including drywall installation, interior and structural metal stud framing, thermal and acoustical insulation and general carpentry for major residential and commercial construction projects.

18.     On information and belief, Capitol Drywall uses various staffing companies and subcontractors to provide labor for its construction projects in the Washington, D.C. metro area.

19.     The use of staffing companies, also known as labor brokers, is an increasingly common means for construction subcontractors to attempt to undercut their competitors' prices by avoiding compliance with fair labor statutes, such as the FLSA.[2]

20.     On information and belief, at all relevant times, Defendant Capitol Drywall had an annual gross-income volume of business of over $500,000, and at least two employees who were

---

[1] Capitol Drywall, Inc., http://www.capitol-drywall.com/ (last visited Oct. 1, 2018).

[2] *See, e.g.*, Catherine Ruckelshaus et al., National Employment Law Project, *Who's the Boss: Restoring Accountability for Labor Standards in Outsourced Work* (May 2014), http://www.nelp.org/content/uploads/2015/02/Whos-the-Boss-Restoring-Accountability-Labor-Standards-Outsourced-Work-Report.pdf ("Business outsourcing is on the rise, through practices such as multi-layered contracting, use of staffing or temp firms, franchising, misclassifying employees as independent contractors, and other means. . . . Lead companies that outsource distance themselves from the labor-intensive parts of their businesses and their responsibilities for those workers."); Lydia DePillis, *Department of Labor Sends Warning Shot to Clients of Temp Staffing Agencies*, Wash. Post, Jan. 20, 2016, https://www.washingtonpost.com/news/wonk/wp/2016/01/20/department-of-labor-sends-warning-shot-to-clients-of-temp-staffing-agencies/?utm_term=.243bbbf53369 ("Subcontracting, outsourcing, and the use of staffing agencies allows businesses to inexpensively scale up and scale down their labor needs, without the extra hassle and liability of adding payroll. But it also adds another layer between workers and the bosses who call the shots, shielding managers from responsibility when the labor provider doesn't follow the law.").

engaged in interstate commerce or who handle, sell, or otherwise work on goods or materials that have moved in interstate commerce.

21.    On information and belief, in early 2016, Defendant Capitol Drywall was contracted to perform construction duties on a new luxury apartment building being erected at 2501 M Street NW, Washington, DC 20037. The building has since been completed and is now known as "2501 M."

22.    According to the building's website, 2501 M's apartments "sparkle with high-end features," including "[e]xpansive private terraces and balconies with Italian wood-effect porcelain tile" and "[p]rivate porte-cochere drop-off."[3] Two-bedroom apartments in 2501 M are currently for sale at prices ranging between $1.2 million and $2.6 million.[4]

23.    Defendant Capitol Drywall provided supervisors, including an individual, whom the Plaintiffs knew as Raul or Raul Jose (hereinafter "Raul"), to manage work at 2501 M. On information and belief, Raul is an employee of Defendant Capitol Drywall.

24.    Raul and other supervisors oversaw Plaintiffs and the other drywall finishers at the 2501 M worksite.

25.    At the beginning of each workday, Plaintiffs reported to their supervisors, including Raul, for instructions.

26.    Throughout the day, Raul and other supervisors moved through the worksite, observing the work of the finishers, assigning new tasks, and correcting them if they were not doing the work to Capitol Drywall's standards.

---

[3] 2501 Residences on M Street, http://www.2501m.com/features/ (last visited Oct. 1, 2018); *id.*, http://www.2501m.com/amenities/.

[4] DC Condo Boutique, http://www.dccondoboutique.com/2501-m.php (last visited Oct. 1, 2018).

27.     Raul and the other supervisors had authority to send Plaintiffs and other employees home if they felt the work did not meet Capitol Drywall's standards.

28.     Capitol Drywall provided materials such as nails and drywall for the 2501 M workers. The drywall finishers provided their own hand tools, such as hammers and drills.

### Defendant East Coast Developers, LLC Generally

29.     Defendant ECD is "one of the tri-state area's premier drywall contractors" and employs over 100 workers.[5] ECD operates as a staffing agency or labor broker, employing individuals to perform work on construction projects for other companies. On information and belief, Defendant ECD does not operate its own construction sites but only staffs other companies' construction sites as a subcontractor or labor broker.  Defendant ECD assigns the employees to work at various sites with different companies.

30.     On information and belief, at all relevant times, Defendant ECD had an annual gross income volume of business of over $500,000 and at least two employees who are engaged in interstate commerce or who handle, sell, or otherwise work on goods or materials that have moved in interstate commerce.

31.     On information and belief, after contracting to perform construction duties for 2501 M, Defendant Capitol Drywall hired Defendant ECD as a subcontractor for the project.

32.     Defendant ECD's owner and president, Defendant Montecinos, recruits employees by word-of-mouth and personal outreach. Mr. Montecinos has the final say as to whether individuals are hired to work for ECD, where they are assigned to work, when they work, and how much they are paid.

---

[5] East Coast Developers, http://www.eastcoastdevelopersllc.com/ (last visited Oct. 1, 2018).

33.     Defendant ECD, through Defendant Montecinos, hired Plaintiffs to work at the 2501 M worksite.

34.     Defendant ECD, through Defendant Montecinos, agreed to pay Plaintiffs at an hourly rate, irrespective of the cost, success, or failure of the project.

35.     The rate of pay for each Plaintiff was determined by Defendant Montecinos upon hire.

36.     Defendant ECD determined Plaintiffs' work schedule. ECD's foremen had authority to, and did in fact, set the employees' required hours. Plaintiffs worked eight hours a day, at least five days a week.

37.     On information and belief, Defendant ECD employed two foremen, John Drury and Pedro (whose last name is unknown to Plaintiffs), at the 2501 M worksite.

38.     The ECD foremen arrived at the worksite each morning and conferred with Capital Drywall supervisors including Raul. After this conversation, supervisors, including Raul, assigned tasks to Plaintiffs and the other workers.

39.     On information and belief, supervisors such as Raul, as the representatives of Defendant Capitol Drywall, had ultimate authority to direct and control Plaintiffs and the other workers.

40.     Defendants ECD and Capitol Drywall were jointly responsible for keeping track of Plaintiffs' hours. Plaintiffs signed in at the beginning of each workday on a sign-in sheet labeled with Defendant Montecinos's name. After Plaintiffs had signed in, Pedro, ECD's foreman, transcribed the information on the sheet with a tablet computer.

41.     Plaintiffs, trusting that Defendant ECD's foreman would keep accurate records, kept only intermittent records of their own hours. The dates and times stated by Plaintiffs in this

Complaint are based on Plaintiffs' best memory and limited records of the time they worked for Defendants.

42.     On information and belief, Defendant Montecinos communicated with Plaintiffs using means including telephone and text message to provide them information regarding how and when they would be paid for their work, in some cases assuring them that they would be paid.

**Plaintiffs' Employment by Defendants**

*Tomas Alvarez*

43.     Defendants employed Plaintiff Tomas Alvarez from March 2, 2017, to March 17, 2017.

44.     Defendant Montecinos determined that Mr. Alvarez would be paid $19 per hour.

45.     At the direction of Defendant Montecinos, Mr. Alvarez reported to the 2501 M worksite on March 2, 2017, and worked eight (8) hours that day.  On March 3, 2017, Mr. Alvarez was sent to a different worksite in Reston, Virginia, where he was not given any work.  On March 6, 2017, Mr. Alvarez returned to the 2501 M worksite, worked there eight (8) hours that day, and eight (8) hours each subsequent business day through March 17, 2017.

46.     From March 2 to March 17, 2017, Mr. Alvarez worked 88 unpaid hours, for which Defendants owed him $1,672 (88 hours at the regular rate of $19 per hour).

*Erika Aquino*

47.     Defendants employed Plaintiff Erika Aquino from March 6, 2017, to March 17, 2017.

48.     Defendant Montecinos determined that Ms. Aquino would be paid $19 per hour.

49.     Ms. Aquino reported to the 2501 M worksite on March 6, 2017, and worked there eight (8) hours that day and each subsequent business day through March 17, 2017.

50.    From March 6 to March 17, 2017, Ms. Aquino worked 80 hours, for which Defendants owed her $1,520 (80 hours at the regular rate of $19 per hour). However, Defendants paid her for only 40 hours of work ($760).

## Collective Action Allegations

51.    Defendants required Plaintiffs and similarly situated employees to work without pay.

52.    Defendants had an obligation under the FLSA to pay their employees at least $7.25 per hour.

53.    Defendants had an obligation under the DCMWA to pay their employees no less than the applicable District of Columbia minimum wage.

54.    Defendants had an obligation under the DCWPCL to pay their employees all wages due for work performed.

55.    Despite Defendants' obligations under relevant wage and hour laws, Defendants intentionally created and implemented a system through which they denied Plaintiffs and similarly situated employees minimum wages and wages due for work performed.

56.    Defendants' compensation policies set forth above constitute willful, knowing, and intentional violations of the FLSA, the DCMWA and the DCWPCL.

57.    Defendants authorized, assented to, or were aware of these violations and the work performed by the Plaintiffs and similarly situated employees.

58.    At no time did Plaintiffs perform work that meets the definition of exempt work under the FLSA or DCMWA.

59.    The collective action that Plaintiffs propose to maintain under the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-

1308(a)(1)(C)(iii), includes all similarly situated employees who are or have been employed by Defendants as non-exempt, hourly-paid or salaried employees who were not paid at least the applicable District of Columbia minimum wage for each hour they worked during the Relevant Period.

60.     During the Relevant Period, the duties and responsibilities of the jobs held by employees similarly situated to the Plaintiffs were the same or substantially similar to the duties and responsibilities of the jobs held by the Plaintiffs, in that all employees performed a variety of construction, carpentry, and drywall finishing jobs.

61.     During the Relevant Period, the harms suffered by employees similarly situated to the Plaintiffs were the same or substantially similar to those suffered by the Plaintiffs, in that all such employees are and were subject to the Defendants' unlawful compensation policies and practices described in this Complaint.

62.     Accordingly, all members of the proposed collective action are "similarly situated" within the meaning of the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-1308(a)(2), and are therefore entitled to proceed on a collective basis.

63.     The Plaintiffs are aware of other similarly situated employees: (1) who were employees of Defendants; (2) who were not paid as prescribed by law by Defendants; and (3) who had their wages unlawfully withheld by Defendants.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT (FLSA) –
### MINIMUM WAGE

64.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 63 above.

65.     At all times relevant to this complaint, Section 206 of the Fair Labor Standards Act provided that "[e]very employer shall pay to each of his employees who in any workweek is . . . employed in an enterprise engaged in commerce . . . wages at . . . $7.25 an hour."

66.     Plaintiffs, and all others similarly situated, were "employees" and Defendants were their "employers" under the FLSA, 29 U.S.C. § 203.

67.     Plaintiffs, and all others similarly situated, were "employed in an enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 203.

68.     The FLSA required Defendants to pay Plaintiffs, and all others similarly situated, at least $7.25 for each hour they worked.

69.     As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, any wages at all during part or all of the employment of Plaintiffs and others similarly situated, to the injury of Plaintiffs and all others similarly situated, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

70.     Defendants' violations of the FLSA were repeated, willful, intentional, and in bad faith.

71.     WHEREFORE, Defendants are liable to Plaintiffs, and all other similarly situated employees, under the FLSA, 29 U.S.C. § 216(b), for all unpaid wages, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT II
## VIOLATION OF THE D.C. MINIMUM WAGE ACT REVISION ACT (DCMWA) – MINIMUM WAGE

72.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 71 above.

73.     Section 32-1003(a)(5)(A) of the DCMWA, as amended by § 2(b) of the Fair Shot Minimum Wage Amendment Act of 2016, provides that "the minimum hourly wage required to be paid to an employee by an employer shall be as of : (i) July 1, 2016: $11.50; (ii) July 1, 2017: $12.50."

74.     Plaintiffs, and all others similarly situated, were "employees" and Defendants were their "employers" under the DCMWA, D.C. Code § 32-1002.

75.     The DCMWA required Defendants to pay Plaintiffs, and all others similarly situated, no less than the applicable District of Columbia minimum wage for each hour they worked.

76.     As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, any wages at all during part or all of the employment of Plaintiffs and all others similarly situated, to the injury of Plaintiffs and all others similarly situated, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

77.     Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

78.     WHEREFORE, Defendants are liable to Plaintiffs, and all other similarly situated employees, under the DCMWA, D.C. Code § 32-1012(b), for all unpaid wages, plus liquidated damages equal to treble the amount of the unpaid wages, interest (both pre- and post- judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## <u>COUNT III</u>
## VIOLATION OF THE D.C. WAGE PAYMENT AND COLLECTION LAW (DCWPCL) – UNPAID WAGES

79.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 – 78 above.

80.    Plaintiffs, and all others similarly situated, were "employees" and Defendants were their "employers" under the DCWPCL, D.C. Code § 32-1301.

81.    The DCWPCL, D.C. Code § 32-1302, required Defendants to pay Plaintiffs, and all others similarly situated, all wages due for work performed.

82.    As set forth above, Defendants failed to pay Plaintiffs, and all others similarly situated, any wages at all during part or all of the employment of Plaintiffs and others similarly situated, to the injury of Plaintiffs and all others similarly situated, and are thus jointly and severally liable to Plaintiffs, and all others similarly situated, for damages.

83.    Defendants' violations of the DCWPCL were repeated, willful, intentional, and in bad faith.

WHEREFORE, Defendants are liable to Plaintiffs and all others similarly situated under the DCWPCL, D.C. Code § 32-1308(a), for their unpaid wages, liquidated damages equal to treble the amount of unpaid wages, interest (both pre- and post- judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other similarly situated, respectfully request that the Court:

A.    Declare this action to be maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), the DCMWA, D.C. Code § 32-1012(b), and the DCWPCL, D.C. Code § 32-1308(a)(1)(C)(iii), and direct Defendants to provide to Plaintiffs a list of all persons employed by them as hourly and salaried employees during the Relevant Period, including the last known street address, email address, and telephone number(s) of each such person,

so that Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

B.      Determine the damages sustained by the Plaintiffs and all similarly situated employees during the Relevant Period as a result of Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 207(a), and the DCMWA, D.C. Code § 32-1003(c), and award such back pay against Defendants in favor of Plaintiffs and all similarly situated employees, plus liquidated damages in an additional equal amount pursuant to 29 U.S.C. § 216(b) and liquidated damages equal to treble the amount of unpaid wages pursuant to D.C. Code § 32-1012(b), plus such pre-judgment interest as may be allowed by law;

C.      Determine the damages sustained by Plaintiffs and all similarly situated employees during the Relevant Period as a result of Defendants' willful and intentional violations of the DCWPCL and award all appropriate damages resulting therefrom to Plaintiffs and all similarly situated employees, including but not limited to liquidated damages equal to treble the amount of unpaid wages pursuant to the DCWPCL, D.C. Code § 32-1308(a)(1)(A)(ii);

D.      Determine the damages sustained by Plaintiffs, and all similarly situated employees, during the Relevant Period as a result of Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 215(a)(2), and award all appropriate damages resulting therefrom to Plaintiffs and similarly situated employees pursuant to 29 U.S.C. § 216(b);

E.      Determine that injunctive relief is appropriate as to the Plaintiffs and all similarly situated employees, and enjoin Defendants from continuing to violate the DCMWA and the DCWPCL;

F.      Award Plaintiffs their costs and disbursements of this suit, including, without

limitation, reasonable attorneys' fees, accountants' fees, investigators' fees, experts' fees,

and other associated costs; and

G.      Grant Plaintiffs and all similarly situated employees such other and further relief as

this Court may deem just and proper.

Dated:  November 2, 2018          Respectfully submitted,

By: /s/ Kevin Metz
Kevin Metz, Bar No. 494087
kevin.metz@lw.com
Sian Jones (*admission forthcoming*)
sian.jones@lw.com
Zachary Arnold (*admission forthcoming*)
zachary.arnold@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

Daniel A. Katz, Bar No. 447412
Daniel_Katz@washlaw.org
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Fax: (202) 319-1010

*Counsel for Plaintiffs Alvarez and Aquino*